**Opinion issued December 18, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00167-CR

————————————

**ABRAHAM CAMPOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Case No. 26,947-3

---

## MEMORANDUM OPINION

A jury convicted appellant, Abraham Campos, of murder in 1992, and the trial court, finding one enhancement paragraph true, assessed punishment at 40 years' confinement. The Fourteenth Court of Appeals affirmed his conviction.

*See Campos v. State*, 946 S.W.2d 414 (Tex. App.—Houston [14th Dist.] 1997, no pet.). In September 2007, appellant filed a motion for DNA testing in the case, which was denied. This Court affirmed the order denying DNA testing. *See Campos v. State*, No. 01-08-00032-CR, 2008 WL 5102463, at * 3 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (mem. op., not designated for publication). A second motion for DNA testing was apparently never ruled on. *See id.* In January 2014, appellant filed a third motion for DNA testing, which the trial court again denied, finding that appellant "has made insufficient allegations to establish by a preponderance of the evidence that the defendant would not have been convicted if additional DNA testing was conducted." Appellant now brings this, his second appeal from the denial of DNA testing, alleging that the trial court erred in (1) determining that appellant failed to meet the requirements of TEX. CODE CRIM. PROC. ANN. art. 64.03 (Vernon Supp. 2014); and (2) denying appellant an evidentiary hearing on his motion.

We affirm.

## BACKGROUND

The background facts, as previously detailed by this Court, are as follows:

> In late August 1992, Martin Rodriguez was stabbed to death outside the house he shared with appellant's mother and Rodriguez's uncle, Emilio Miranda. Over the course of several late night hours before the stabbing, appellant, Rodriguez, and Miranda spent time drinking beer

together outside that house. All had consumed many beers. At some point, Miranda left the group and went inside the house.

Miranda testified at trial that he heard Rodriguez screaming and that he looked out a kitchen window to see appellant grabbing Rodriguez while holding a knife. When he ran outside, Miranda saw blood on Rodriguez's body and saw appellant running away from the house.

At trial, appellant's mother denied any knowledge of anything that happened before or after the stabbing at her house, including whether appellant was present. She contradicted some of Miranda's statements and denied seeing Rodriguez's body on the ground, did not know whether he was alive or dead, and just ran to the neighbor's house to ask for help. Appellant's mother also denied speaking to anyone about the stabbing except police detectives. Yet, three other witnesses testified at trial that appellant's mother told them that her son had killed Rodriguez.

Deputy C. Frame testified that he collected items from the scene of the stabbing. Frame found a knife or knife-like instrument inside the house in the kitchen sink. The instrument was "very wet and saturated with water." No identifiable prints were detected on this knife-like instrument. Moreover, no evidence at the trial established that the instrument was used to murder Rodriguez. Deputy Frame was able to lift fingerprints from a beer can he collected at the scene and testified at trial that the prints matched appellant's fingerprints.

Officer T. Earl of the Alvin Police Department encountered appellant at 2:16 a.m. on the night of the offense. Appellant was six-tenths to seven-tenths of a mile away from his mother's house. He was at a pay phone and appeared to be "very intoxicated." When Officer Earl approached him, appellant identified himself as "Juan Carlos." Officer Earl arrested appellant for public intoxication and transported him to the Alvin Police Department. At the police station, appellant denied having a local address or any relatives in the area and claimed that he lived in Mexico City, Mexico. He was not bleeding and had no scratch marks on him or blood splotches on his clothing.

*Campos*, 2008 WL 5102463, at *1 (footnotes omitted).

**DENIAL OF MOTION FOR DNA TESTING**

Under Texas Code of Criminal Procedure Chapter 64, a convicted person may move for forensic DNA testing of evidence containing biological material. TEX. CODE CRIM. PROC. art. 64.01(a-1). The convicting court may order forensic DNA testing only if the statutory preconditions of Chapter 64 are met. *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002). "Basic requirements [for post-conviction DNA testing] are that biological evidence exists, that evidence is in a condition that it can be tested, that the identity of the perpetrator is or was an issue, and that this is the type of case in which exculpatory DNA results would make a difference." *Ex parte Gutierrez*, 337 S.W.3d 883, 891 (Tex. Crim. App. 2011); *see* TEX. CODE CRIM. PROC. arts. 64.01, 64.03. A convicted person is not entitled to DNA testing when the testing would "merely muddy the waters." *Gutierrez*, 337 S.W.3d at 901. In his first issue on appeal, appellant contends the trial court erred in denying his motion for DNA testing.

***Standard of Review***

We review a trial court's decision to deny a motion for post-conviction DNA testing under a bifurcated standard of review. *Rivera v. State*, 89 S.W.3d 85, 59 (Tex. Crim. App. 2002). Under this standard, we afford almost total deference to a trial court's determination of issues of historical fact and its application of the law to fact issues that turn on determinations of witnesses' credibility and demeanor,

4

but we review de novo the trial court's application of the law to fact issues that do not turn on determinations of witnesses' credibility and demeanor. *Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2008). However, where, as here, the trial record and affidavit of appellant are the only sources of information supporting the motion, the trial court is in no better position than we are to make its decision, and we review the issues de novo. *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005) (explaining that because trial court did not hold live hearing on request for DNA testing, reviewing court would conduct de novo review as trial court was in no better position to determine issues).

### *Appellant's Motion to Conduct DNA testing*

In his third motion for DNA testing, appellant requested DNA testing of a knife or knifelike instrument, clothes of the State's witness, Emilio Miranda, other clothing seized as evidence, and a pipe found smeared with blood. Appellant claims that "there are newer testing techniques available which can provide results which are more and reliable tests[,]" and that "[t]here are additional tests available, which can explore different [sic] loci, and thereby definitely exclude Defendant Abraham Campos." Neither appellant's motion, nor his affidavit attached thereto, alleges how the items he wished to have tested would establish by a preponderance of the evidence that a reasonable probability exists that he would not have been prosecuted or convicted in exculpatory results had been obtained through DNA

5

testing.  *See Thompson v. State*, 95 S.W.3d 469, 472 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (setting for standard for obtaining DNA testing).

### *Law of the Case Regarding Testing on Knife*

The State contends that this Court's previous opinion creates law of the case preventing appellant from re-litigating the issues addressed in our previous opinion.  We agree.  In *State v. Swearingen*, the Court of Criminal Appeals considered whether the law-of-the-case doctrine applied to a defendant's fourth motion for DNA testing.  424 S.W.3d 32, 36–38 (Tex. Crim. App. 2014).  The court noted as follows:

> The "law of the case" doctrine provides that an appellate court's resolution of questions of law in a previous appeal are binding in subsequent appeals concerning the same issue.  In other words, when the facts and legal issues are virtually identical, they should be controlled by an appellate court's previous resolution.  This is a court-made doctrine designed to promote judicial consistency and efficiency.

*Id.* at 36 (footnote omitted).  The court then refused to reconsider its previous holding, stating:

> Since we have previously held that, as a matter of law, the appellee had not met his burden of proof as to the existence of biological material, and because the legislature's amendment did not alter this result . . . the trial court erred under the law of the case doctrine when it disregarded our previous holding.

*Id.* at 38.

6

In our previous case, this Court held that appellant was not entitled to DNA testing on the knife or knife-like instrument because "subjecting it to testing would not exonerate appellant[,]" and "[e]ven if the result of DNA testing had been available at his trial, it is not reasonably probable that appellant would have had a 51% chance of avoiding conviction." 2008 WL 5102463, at *3. In this case, appellant's third motion for DNA testing reurges the same issues regarding the knife that we addressed in our previous opinion. Thus, the trial court did not err in rejecting appellant's request for DNA testing on the knife.

### DNA testing on Remaining Items

Our previous opinion did not address the trial court's denial of DNA testing on the clothing or pipe in possession of the police because appellant had not, at that point, obtained a ruling on that request. *Id*. at *3. In order for a defendant to be entitled to post-conviction DNA testing, he must show by a preponderance of the evidence (that is, a greater that 50% likelihood) that he would not have been convicted had any exculpatory results generated by the proposed testing been available at the time of trial. *Holberg v. State*, 425 S.W.3d 282, 286–87 (Tex. Crim. App. 2014). "Exculpatory results" mean only results excluding the convicted person as the donor of the material. *Id.*

Appellant does not articulate how the absence of his own DNA on Miranda's clothing would be exculpatory. And, the presence of the victim's DNA

7

on Miranda's clothes would only confirm what Miranda had testified to, i.e., that he was present the night Rodriguez was murdered. Appellant does not state whose DNA was likely to be found on the remaining clothes or the bloody pipe, or faucet handle as it is also described. Presumably, the blood on the pipe came from the only person injured at the scene, i.e., the victim. And, the faucet handle or pipe was never alleged to be the murder weapon.[1] Assuming the remaining clothes sought to be tested belonged to appellant, the victim's blood on them would be inculpatory, not exculpatory.

Even if the clothes and pipe had DNA belonging to a third person, given the other evidence in the case, it would not establish by a preponderance of the evidence that appellant was not guilty. *See Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010) ("Texas courts have consistently held that a movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing."); *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) (affirming a trial court's denial of postconviction DNA testing because "even if the evidence was retested and determined to contain another person's DNA in addition to [the defendant's] DNA, it would not establish by [a] preponderance of the evidence that [the defendant] would not have been convicted if the jury had heard that DNA

---

[1]    The inference raised at trial was that the murderer got the victim's blood on the faucet when he cleaned his hands.

8

from a third-party was present."); *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) ("The presence of another person's DNA at the crime scene will not, without more, constitute affirmative evidence of appellant's innocence."); *see also Baylor v. State*, No. 02–10–00561–CR, 2011 WL 4008026, at *3 (Tex. App.—Fort Worth Sept. 8, 2011, no pet.) (mem. op., not designated for publication) (relying on evidence presented at the defendant's trial and recited in an earlier appellate opinion to affirm a trial court's denial of his later motion for DNA testing).

As we set forth in our previous opinion, there was other evidence of appellant's guilt.

> Miranda testified that when he heard Rodriguez scream, he looked out a kitchen window and saw appellant holding a knife to Rodriguez. In addition, when he ran outside, Miranda saw appellant running away from the house. Though appellant's mother contradicted Miranda, other evidence, including the beer can with appellant's fingerprints, shows that he was present at the house on the night of the stabbing. When Officer Frame arrested appellant, he was less than a mile away from his mother's house, where the murder took place. Three individuals testified that appellant's mother told them that her son had killed Rodriguez.

*Campos*, 2008 WL 5102463, at *2. Appellant gave a false name when arrested, denied living in the area, and claimed to be from Mexico City. Under these circumstances, we conclude, as we similarly concluded in appellant's previous DNA appeal, "subjecting [the clothes and pipe] to testing would not exonerate appellant, given the probative force of the evidence tending to show that appellant

9

was guilty and the lack of any link between [the items] and Rodriguez's murder." *Id.* at \*3. "Even if the results of DNA testing had been available at his trial, it is not reasonably probably that appellant would have had a 51% chance of avoiding conviction." *Id.*

Accordingly, we overrule appellant's first issue on appeal.

## DENIAL OF HEARING

In his second issue on appeal, appellant contends the trial court erred in denying his motion for DNA testing without first conducting an evidentiary hearing. However, "Article 64.03 does not require any evidentiary hearing before the trial judge decides whether a convicted person is entitled to DNA testing." *Gutierrez*, 337 S.W.3d at 893 (citing *Rivera*, 89 S.W.3d at 58–59).

Accordingly, we overrule appellant's second issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).